
# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Green Apple iPhone<br>Seized as FP&F No. 20235655000008301 Line Item 0004<br>("Target Device 2") | )<br>)<br>)<br>)<br>)<br>) | Case No. '23 MJ00098 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U. S. C. § 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Giancarlo Lugo, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Giancarlo Lugo, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: 01/11/2023

_____
*William V. Gallo*
*Judge's signature*

City and state: San Diego, California

HON. William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A-2

## PROPERTY TO BE SEARCHED

The following property is to be searched:

Green Apple iPhone
Seized as FP&F No. 2023565500008301 Line Item 0004
(**"Target Device 2"**)

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

11

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A-1, and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrants.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **December 10, 2022, through January 10, 2023**:

a.  tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.  tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.  tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above, which are evidence of violations of Title 8, United States Code, Section 1324.

# AFFIDAVIT

I, Giancarlo Lugo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

> Black Apple iPhone
> Seized as FP&F No. 2023565500008301 Line Item 0003
> (**"Target Device 1"**)
>
> Green Apple iPhone
> Seized as FP&F No. 2023565500008301 Line Item 0004
> (**"Target Device 2"**)

The **Target Devices**, as further described in Attachment A-1, A-2, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrants related to the investigation and prosecution of Raul Carlos SORIA for attempting to transport and move illegal aliens within the United States. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

1

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2009 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for fourteen years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work

2

in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement

3

officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On January 10, 2023, Border Patrol Agent D. Lawson was conducting assigned duties in the Campo Border Patrol Station's area of responsibility. Agent Lawson was dressed in full rough duty uniform with his agency vest displaying agency patches and insignia. Agent Lawson was informed by the previous shift of a suspicious white Chevy Tahoe driving around in the area. Agent Lawson took note of the information and staged his vehicle near State Route 94 (SR-94) and Jeb Stewart Road, which gave him a clear vantage point to watch all inbound and outbound traffic. At approximately 4:40 PM, Agent Lawson was informed by Border Patrol Agent G. Ayvar that he had stopped a vehicle, and the driver pointed out a white Tahoe saying that the driver of that white truck was giving him instructions where to pick up undocumented aliens. The white Tahoe was traveling west on Jeb Stewart Road at a high rate of speed as it approached Agent Lawson location. Agent Lawson noticed the vehicle had tinted windows and that the vehicle was riding low in the rear. As Agent Lawson began to follow the vehicle, he requested records checks of the vehicle, which revealed the vehicle was registered out of Temecula, California, confirming that this was the same suspicious white chevy Tahoe encountered by the previous shift.

12. At approximately 5:18 PM, Agent Lawson conducted a vehicle stop on the Tahoe, on SR-94 and Star Ranch Flats. Agent Lawson asked the driver to lower all the windows for officer safety. The driver complied and lowered the windows, agent Lawson then noticed multiple passengers in the vehicle laying on top of each other. Agent Lawson conducted an immigration inspection on the driver. The driver, later identified as the defendant, Raul Carlos SORIA, stated that he is a United States Citizen. Agent Lawson then conducted an immigration inspection on all nine passengers. All nine individuals,

including three later identified as material witnesses, Luis Jhayr CASADOS Bustos, Kevin Ruben GONZALEZ Soto, and Gilberto SANCHEZ Cristobal, stated that they are citizens of Mexico without any immigration documents that would allow them to enter or remain in the United States legally. At approximately 5:22 PM, Agent Lawson placed all ten individuals, including SORIA, CASADOS, GONZALEZ, and SANCHEZ, under arrest.

13. At the time of SORIA's arrest, a black Apple iPhone (**Target Device 1**), and a green Apple iPhone (**Target Device 2**) were found in SORIA's pants pocket. The **Target Devices** was subsequently seized.

14. The defendant, Raul Carlos SORIA, was advised of his Miranda rights during his video recorded sworn statement. SORIA stated that he was visiting San Diego and that it was his first-time visiting San Diego. SORIA stated that he and his girlfriend, Araceli CERNA, drove down to San Diego together. SORIA claimed that his girlfriend rented a 2015 White Chevy Tahoe in San Diego. SORIA then stated he had his girlfriend follow him because the Tahoe had a bad battery, and he was worried it would die on the road. SORIA then claimed he randomly picked up 9 hitchhikers, but he was unsure of the location where he picked them up. SORIA claimed throughout the interview that his girlfriend was not involved in anything and had no knowledge of anything he did.

15. Material witnesses, Luis Jhayr CASADOS Bustos, Kevin Ruben GONZALEZ Soto, and Gilberto SANCHEZ Cristobal, stated that they are citizens of Mexico. All three material witnesses stated that they crossed illegally to find work in the United States. Both GONZALEZ and SANCHEZ stated that arrangements to be smuggled into the United States were made by someone close to them and that they agreed to pay between $10,000 and $12,000 USD. Both GONZALEZ and SANCHEZ added that the agreement included transportation all the way to Los Angeles, California. CASADOS stated that he did not make arrangements to be smuggled into the United States, he crossed on his own and eventually found a group of eight individuals and joined them. Both GONZALEZ and SANCHEZ stated that they used a ladder to cross into the United States.

GONZALEZ and SANCHEZ stated that one of the individuals in the group was given a radio to receive directions to the intended pickup location. All three material witnesses stated that they were told that a large white vehicle would arrive to pick them up. SANCHEZ stated that when a large white vehicle arrived, the driver whistle to them and that that was the sign form them to run to the vehicle. CASADOS and GONZALEZ stated that they entered the vehicle through the rear. SANCHEZ stated that the driver of the vehicle instructed them in Spanish to enter and lay down before driving away. CASADOS stated that the people in the group just told him to enter the vehicle, so he did. CASADOS and GONZALEZ stated that they were not offered food or water and they were uncomfortable. All three stated that either they didn't have seatbelts to use, or they were not instructed to fasten their seatbelts.

16. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the **Target Devices** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on **December 10, 2022, through January 10, 2023**.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be

7

simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

19. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

8

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

21. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of an alien smuggling violation of Title 8, United States Code, Section 1324.

22. Because the **Target Devices** was seized at the time of SORIA's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **December 10, 2022, through January 10, 2023.**

23. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A, seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Giancarlo Lugo
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 11th day of January 2023.

_William V. Gallo_
Hon. William V. Gallo
United States Magistrate Judge